IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MURAD DIGGS, )<br>)<br>      Petitioner, )<br>)<br>  v. )<br>)<br>WARDEN SCOTT CERESINI and )<br>ATTORNEY GENERAL OF THE STATE )<br>OF DELAWARE, )<br>)<br>      Respondents. ) | C.A. No. 22-1343-CFC-EGT |

## REPORT AND RECOMMENDATION

Presently before the Court is Petitioner Murad Diggs's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1). The State filed an answer in opposition to the petition (D.I. 11) and Petitioner filed a reply (D.I. 16). For the reasons set forth below, the Court recommends that the petition be DENIED.

**I.    BACKGROUND**

On October 26, 2018, Corporal Marino of the Wilmington Police Department received a call about an individual carrying a concealed firearm in the 200 block of South Harrison Street in downtown Wilmington. *Diggs v. State*, 257 A.3d 993, 997 (Del. 2021). The individual was described as a "black male, approximately 30 to 35 years of age" and wearing a camouflage jacket with a firearm tucked into his waistband. *Id.* As he was off duty, Corporal Marino relayed the information to Wilmington Police Patrolman Shupe, the latter of whom was on duty and near South Harrison Street at the time. *Id.* at 998. After informing his partner and calling for backup, Patrolman Shupe observed an individual matching the provided description walking along South Harrison Street and ultimately entering a convenience store known as the Shop Smart Market. *Id.* Patrolman Shupe waited for the requested backup to arrive, and all four Wilmington Police

Officers approached the store. *Id.* As Patrolman Shupe entered the store, the individual – later identified as Petitioner – was attempting to leave. *Id.* Patrolman Shupe asked if he could speak with Petitioner, and Petitioner responded by violently throwing his cellphone and a cigar to the ground and assuming a "defensive stance." *Id.* Based on the information received from Corporal Marino, and viewing Petitioner's posture to be one conducive to drawing a firearm, Patrolman Shupe decided to check Petitioner for weapons and grabbed his arm. *Id.* A struggle ensued and Petitioner was ultimately taken to the ground and placed in handcuffs. *Id.* Patrolman Shupe then performed a pat-down search of Petitioner, which revealed a loaded handgun in his waistband. *Id.* at 999. Petitioner was arrested and later released on bail. *Id.*

On December 17, 2018, a New Castle County grand jury indicted Petitioner for resisting arrest and carrying a concealed deadly weapon. (D.I. 12-1 at Dkt. No. 2). Because of a prior felony conviction, the grand jury also indicted Petitioner for possession of a firearm by a person prohibited and possession of ammunition by a person prohibited. (*Id.*; *see also id.* at "Charges").

On March 11, 2019, Petitioner filed a motion to suppress evidence of the loaded firearm found on him as obtained in violation of the Fourth Amendment. (D.I. 12-1 at Dkt. No. 3; D.I. 12-5). Petitioner argued that Patrolman Shupe lacked reasonable suspicion to stop Petitioner under *Terry v. Ohio*, 392 U.S. 1 (1968). (*See* D.I. 12-5). On April 17, 2019, the Delaware Superior Court denied the motion to suppress. *See State v. Diggs*, 2019 WL 1752644, at \*1 (Del. Super. Ct. Apr. 16, 2019), *aff'd*, 257 A.3d 993 (Del. 2021). The Superior Court found that the tip about a thirty-something black male in a camouflage jacket carrying a concealed firearm provided Patrolman Shupe with reasonable suspicion to stop Petitioner, who matched that description in that same area, to investigate whether Petitioner was committing a crime. *Id.* at \*6. Petitioner's subsequent conduct – *i.e.*, aggressively throwing items from his hands and assuming a "defensive

2

stance" – provided Patrolman Shupe with further reasonable suspicion to believe that Petitioner possessed a weapon. *Id.* at *6-7. As such, Patrolman Shupe did not violate Petitioner's Fourth Amendment rights in stopping Petitioner and conducting a limited search for weapons. *Id.* at *7. Evidence of the loaded firearm found during that search was therefore lawfully obtained.

The case proceeded to a jury trial and, on June 5, 2019, Petitioner was found guilty of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited. (D.I. 12-1 at Pages 6-7).[1] He was sentenced on August 14, 2020 to a term of twenty-five years imprisonment. (D.I. 12-4 at 1-5). Petitioner appealed (D.I. 12-1 at Dkt. No. 49; D.I. 12-4), and the Delaware Supreme Court affirmed Petitioner's conviction, *see Diggs*, 257 A.3d at 997.[2]

On January 10, 2022, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. (D.I. 12-1 at Dkt. No. 63; D.I. 12-11). Petitioner's motion raised four grounds: (1) ineffective assistance of counsel for failure to challenge witness credibility or seek the informant's testimony, (2) unlawful search and seizure, (3) double jeopardy for being convicted of both prohibited possession charges and (4) a "catch all" claim for any claims his attorney failed to raise previously. (D.I. 12-11 at 3). The Superior Court denied Petitioner's post-conviction motion on March 15, 2022. *See State v. Diggs*, No. 1810015149A, 2022 WL 779569 (Del. Super. Ct. Mar. 15, 2022). Petitioner did not appeal that decision.

---

[1] The resisting arrest and concealed carry charges were severed from the possession charges on June 4, 2019 and ultimately dropped. (D.I. 12-1 Dkt. No. 37; D.I. 12-2 at Dkt. No. 3).

[2] Although the Delaware Supreme Court took issue with the trial court's "citizen informant" analysis regarding the tip received by Corporal Marino, the court ultimately agreed that Patrolman Shupe had reasonable suspicion to stop Petitioner and conduct a protective pat-down search. *See Diggs*, 257 A.3d at 1006-09.

On October 11, 2022, Petitioner filed the present petition for federal habeas relief under § 2254. (D.I. 1).³ Petitioner raises the same four grounds in his habeas petition that he raised in his post-conviction relief motion under Rule 61. (*Compare* D.I. 1 ¶ 9(f) (ineffective assistance of counsel, unlawful search and seizure, double jeopardy and catch-all claim), *with* D.I. 12-11 at 3 (same)). The State filed an answer, arguing that all claims for relief should be dismissed as either procedurally defaulted or generally not cognizable under federal habeas review. (*See* D.I. 11).

## II.  LEGAL STANDARDS

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b)

---

³ While his firearm case was ongoing, Petitioner was arrested on charges of drug distribution. (D.I. 12-1 at Dkt. No. 21; *see also* D.I. 12-3 at Page 1). He was indicted by a New Castle County grand jury for four drug-related offenses and ultimately pled guilty to drug dealing a tier four quantity, with the remaining charges not prosecuted. (D.I. 12-3 at Pages 1-2). Although those charges are referenced in the petition (D.I. 1 ¶ 5), nothing about that arrest or subsequent guilty plea appears to be at issue in the present habeas petition.

& (c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See O'Sullivan*, 526 U.S. at 842-48; *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner need not raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (petitioner meets technical requirements for exhaustion in this situation because state remedies no longer available). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim

5

due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-65 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting therefrom or (2) that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his ***actual*** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (internal quotations omitted).

Alternatively, a federal court may excuse a procedural default if a petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. To establish actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See House v. Bell*, 547 U.S. 518, 536-38

(2006); *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018); *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C.   Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" if the state court decision finally resolves the claim based on its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport

7

with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014) (asserting Supreme Court has repeatedly restated holding describing "unreasonable application").

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and the presumption is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that § 2254(e)(1)'s clear and convincing evidence standard only pertains to state-court determinations of factual issues and § 2254(d)(2)'s unreasonable standard applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A habeas court cannot supersede the trial court's determination if "[r]easonable minds reviewing the record might disagree" about the finding in question. *See Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

### III.   DISCUSSION

As set forth above, Petitioner asserts four grounds for habeas relief: (1) ineffective assistance of counsel, (2) unlawful search and seizure, (3) double jeopardy and (4) a "catch all" claim. (*See* D.I. 1 at 6-11). The State argues that Petitioner's first, third and part of his fourth grounds are procedurally defaulted. (D.I. 11 at 9-15). The State further argues that the remaining

8

grounds – *i.e.*, Petitioner's unlawful search and seizure arguments under the Fourth Amendment – are not cognizable. (*Id.* at 15-17). The Court agrees with the State.

### A. Ineffective Assistance of Counsel, Double Jeopardy and "Catch All" Claims

The State argues that Petitioner did not properly raise his first, third and part of his fourth grounds of the habeas petition before the Delaware Supreme Court and, as such, those grounds are not exhausted. (D.I. 11 at 9-15). In his reply, Petitioner does not seriously dispute that he failed to present his ineffective assistance, double jeopardy and most of his "catch all" claims to the state's highest court. (*See* D.I. 16 at 2). Instead, he focuses on the denial of his motion to suppress evidence of the loaded firearm, seemingly abandoning his other claims for habeas relief.[4] (*See, e.g.*, D.I. 16 at 2-3 (citing D.I. 12-4 at 38)). The Court ultimately agrees that the majority of issues raised in the present petition were not properly exhausted.

In his direct appeal, Petitioner only raised issues related to his motion to suppress – namely, (1) whether the Superior Court erred in finding the stop (and subsequent search) of Petitioner reasonable under the Fourth Amendment and (2) whether the Superior Court committed plain error in failing to apply a "lost or missing evidence" inference in ruling on the suppression motion. (D.I. 12-4 at 3). As to the first ground, Petitioner argued that the Superior Court committed both legal and factual error in finding that Patrolman Shupe had reasonable suspicion to stop Petitioner. (*Id.* at 20-37). And as to the second ground, Petitioner argued that the Superior Court committed plain error in not drawing an adverse inference from the police's failure to preserve proof of the informant's call or failure to obtain video evidence of the convenience store encounter. (*Id.* at

---

[4] Petitioner indicated that he directly appealed each ground for relief raised in his petition (D.I. 1 at 7-8 & 10-11 (part (c) for Grounds One, Two, Three and Four)) but that did not happen. Only suppression issues were raised in the direct appeal.

9

38-47).[5]  There was never any mention of ineffective assistance of counsel, double jeopardy or anything else.  Indeed, these claims were all raised for the first time in Petitioner's motion for post-conviction relief filed in Delaware Superior Court.  (*See* D.I. 12-11).  That motion was denied.  *See State v. Diggs*, No. 1810015149A, 2022 WL 779569.  And Petitioner did not appeal that decision.  Therefore, Petitioner has failed to exhaust his first and third grounds for relief, as well as any part of his fourth "catch all" ground that does not relate to his motion to suppress.

Although Petitioner has not exhausted these grounds for relief in state court, he is now unable to do so.  The thirty-day window in which criminal defendants may appeal post-conviction orders has elapsed.  *See* DEL. SUP. CT. R. 6(a)(iii)(B) (post-conviction orders must be appealed "[w]ithin 30 days after entry upon the docket of a judgment or order in any proceeding for post-conviction relief").  And any subsequent motion for post-conviction relief at this point would be "summarily dismissed" as lacking the requisite evidence of "actual innocence" or implementation of a new rule of constitutional law.  *See* DEL. SUPER. CT. CRIM. R. 61(d)(2).  Petitioner is therefore excused from the exhaustion requirement because he can no longer comply.  That being said, Petitioner's claims are procedurally defaulted because a state procedural rule now bars his ability to present these claims to the Delaware Supreme Court.  *See Coleman*, 501 U.S. at 750.

The Court may not consider the merits of Petitioner's procedurally defaulted claims unless he demonstrates either (1) cause for the procedural default and actual prejudice resulting therefrom or (2) that a fundamental miscarriage of justice will result if the Court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d. Cir. 1999).  In his habeas petition, Petitioner states that he did not appeal the denial of post-conviction relief

---

[5]  Petitioner conceded in his appeal brief, however, that he never raised this "lost or missing evidence" argument below.  (D.I. 12-4 at 38).

10

because he believed that the Delaware Superior Court's denial of his motion ended the appeal process. (D.I. 1 at 7 & 9-12). This is insufficient to show cause. As the Supreme Court has explained, "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Petitioner's lack of understanding of the appeals process (and the consequences for not appealing) is not external to him and not sufficient cause for the default. *See Cristin v. Brennan*, 281 F.3d 404 (3d Cir. 2002) ("Generally, 'cause' cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal."). Because Petitioner has failed to show cause for the procedural default, the Court need not reach the issue of actual prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner has also failed to show that a fundamental miscarriage of justice will occur if this Court does not reach his first, third and fourth grounds for relief on the merits. The miscarriage of justice exception to a procedurally defaulted claim "is concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner's grounds for relief are all directed to legal and evidentiary issues – not claims that Petitioner was factually innocent of the prohibited possession crimes for which he was convicted. Indeed, Petitioner never specifically challenges that he was prohibited from possessing a firearm or ammunition, nor does he challenge that he was, in fact, in possession of both a firearm and ammunition on October 26, 2018. (*See generally* D.I. 1 & 16 (Petitioner's briefs silent as to factual innocence)).[6] In fact, the Court has been provided with no evidence (new or otherwise) to conclude that Petitioner was actually innocent of possessing a loaded firearm when he is prohibited from doing so. As such, no miscarriage of justice will result if the Court declines to reach his procedurally defaulted claims.

---

[6] Prior to trial, Petitioner stipulated that he was a person prohibited from possessing firearms or ammunition. (D.I. 12-1 at Dkt. No. 38).

11

Because Petitioner's first, third and most of his fourth grounds are procedurally barred, the Court recommends that the petition be denied as to those grounds.

### B. Unreasonable Search and Seizure Claims

Petitioner's remaining grounds for relief relate to the protective search that uncovered a loaded firearm on his person and ultimately led to his arrest. (*See* D.I. 1 at 8 & 11 (Grounds Two and Four)). Petitioner filed a motion to suppress evidence of the loaded firearm in the Delaware Superior Court, and he challenged the denial of that motion in his direct appeal to the Delaware Supreme Court. *See Diggs*, 257 A.3d 993. And Petitioner raised the issue again in his post-conviction motion for relief (the denial of which he did not appeal). *See State v. Diggs*, No. 1810015149A, 2022 WL 779569, at *1. Petitioner's Fourth Amendment grounds for habeas relief were thus properly exhausted in state court. Petitioner continues to maintain that Patrolman Shupe's investigatory stop and protective search was not supported by reasonable suspicion and was therefore in violation of the Fourth Amendment. (D.I. 16 at 4). Petitioner also contends that any officer testimony at the suppression hearing would have been contradicted by obtainable (but not obtained) security camera footage and that the failure to draw an adverse inference from the missing evidence was an error. (*Id.*). The problem with Petitioner's remaining arguments, however, is that habeas review does not afford him any relief here.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism." *Wallace v. May*, C.A. No. 19-176-CFC, 2022 WL 671081,

12

at *10 (D. Del. Mar. 7, 2022). If a "structural defect in the system itself" prevents a petitioner's claim from being heard, however, then *Stone* does not bar federal habeas relief. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

The State provided Petitioner with the opportunity to fully and fairly litigate his Fourth Amendment claims. Delaware Superior Court Criminal Rule 41(f) provides the procedural mechanism for criminal defendants to file pre-trial motions to suppress evidence obtained from an allegedly unreasonable search or seizure. And Petitioner availed himself of that procedure, filing a motion to suppress evidence obtained from a search he contended was unlawful. (D.I. 12-1 at Dkt. No. 10). The Delaware Superior Court held a suppression hearing and ultimately denied Petitioner's motion. (*Id.* at Dkt. Nos. 14 & 17). In his direct appeal to the Delaware Supreme Court, Petitioner focused exclusively on the denial of his suppression motion. (*See* D.I. 12-4 at 17-37 (trial court erred in denying motion to suppress); *id.* at 38-47 (trial court erred in not applying "lost or missing evidence" inference regarding video footage)).[7] And the Delaware Supreme Court squarely (and fully) addressed Petitioner's Fourth Amendment arguments. *See Diggs*, 257 A.3d at 1003-11. This procedure is regularly found to be sufficient to afford habeas petitioners the full and fair opportunity to litigate Fourth Amendment claims. *See, e.g.*, *Restrepo-Duque v. May*, C.A. No. 17-1745-CFC, 2022 WL 4548645, at *5-6 (D. Del. Sept. 29, 2022); *Taylor v. May*, C.A. No. 11-1251-CFC, 2022 WL 980859, at *25-26 (D. Del. Mar. 31, 2022); *Ingram v. May*, C.A. No. 19-2084-CFC, 2023 WL 1861075, at *6 (D. Del. Feb. 9, 2023). Petitioner therefore cannot complain that he was denied an opportunity to fully and fairly litigate his Fourth Amendment claims. Nor does he. Instead, Petitioner argues that the Delaware state courts reached the wrong result. (*See*

---

[7] Petitioner admitted in his appeal brief that he never raised this "lost or missing evidence" argument below. (D.I. 12-4 at 38).

D.I. 16). But this is insufficient to overcome the *Stone* bar. *See Marshall*, 307 F.3d at 82 ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."). Petitioner's Fourth Amendment claims are thus barred from habeas review. As such, the Court recommends that the petition be denied as to the second ground for relief, as well as any aspect of the "catch all" ground that relates to Petitioner's Fourth Amendment claims.

## IV.   CERTIFICATE OF APPEALABILITY

If this report and recommendation is adopted, the presiding judge must further determine if a certificate of appealability is appropriate. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that reasonable jurists would find it debatable as to (1) whether the petition states a valid claim of the denial of a constitutional right and as to (2) whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

Here, the Court concludes that reasonable jurists could not disagree as to the Court's conclusions and therefore recommends that a certificate of appealability not be issued.

## V.   CONCLUSION

For the foregoing reasons, the Court recommends that the petition (D.I. 1) be DENIED and that no certificate of appealability be issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within

fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be limited to ten (10) double-spaced pages and filed within fourteen days (14) after the objections. Failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: September 18, 2025

_____
UNITED STATES MAGISTRATE JUDGE